**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JIMMIE C. GARDNER,

                    Petitioner,

v.                                   CIVIL ACTION NO.   2:12-cv-03386

MARVIN C. PLUMLEY,

                    Respondent.

**MEMORANDUM OPINION AND ORDER**

Pending before the court is Jimmie C. Gardner's Petition for Writ of Habeas Corpus [Docket 2]. This action was referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Proposed Findings and Recommendation by Judge Stanley have been filed [Docket 7], and the petitioner has filed objections [Docket 10]. This matter is ripe for review. For the reasons discussed below, the Petition for Writ of Habeas Corpus [Docket 2] is **DENIED**, and the petitioner is **DIRECTED** to file an amended petition for writ of habeas corpus within 30 days of this order.

      **I.**    **Factual and Procedural History**[1]

          **A.  The Petitioner's Underlying Conviction**

The petitioner in this case, Jimmie C. Gardner, was convicted of sexual assault, burglary, assault during the commission of a felony, and aggravated robbery in 1990. *State v. Gardner*, No.

---

[1] The following facts are derived from the incomplete record currently before the court.

89-F-153 (Cir. Ct. Kanawha Cty, Mar. 5, 1990). He is currently serving an aggregate sentence of 33 to 110 years. *Id.* The petitioner was tried for sexual assault, burglary, assault during the commission of a felony, and aggravated robbery against two women, Mrs. Wilma Galati and Mrs. Lillian Ruckman, which occurred in 1987. *Id.* According to the petitioner, "[t]he perpetrator in the Galati case left behind a bloody fingerprint," and "[a] partially smoked cigarette was left behind in the Ruckman case." (Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody ("Petition") [Docket 2], at 3). "Seminal fluid was also detected in the body of both sexual assault victims." (*Id.*).

The petitioner contends that his conviction "was mostly based on the testimony of the State's then Chief Serologist, Fred Salem Zain." (Petition [Docket 2], at 4). "Zain testified that Gardner's forensic characteristics were inconclusive and he could not be excluded as the secretor of the spermatozoa in the Ruckman case . . . [and] that he was unable to obtain a reliable finding of seminal fluid in the Galati serology evidence[] to continue testing." (*Id.*). The petitioner was ultimately convicted of sexual assault, burglary, assault during the commission of a felony, and aggravated robbery against Mrs. Galati, and acquitted of all charges related to Mrs. Ruckman. *State v. Gardner*, No. 89-F-153 (Cir. Ct. Kanawha Cty., Mar. 5, 1990).

The petitioner alleges that after his conviction, new evidence came to light indicating that there was a discrepancy between the petitioner's blood type and the seminal fluid found in both victims. (Petition [Docket 4], at 4). He also alleges that the prosecution was aware of this discrepancy. (*Id.*). Additionally, the petitioner contends that after his trial, he was "provided documents indicating the bloody fingerprint evidence was ruled to be inconclusive for a match" to him during the investigation of the cases in 1987 and 1988. (*Id.* at 5). The petitioner contends that

2

the blood test results excluded him as the assailant in both crimes and implicated another suspect.

(*Id.* at 4-5).

## B.  Testimony and Findings of Fred Zain

Then-Chief Serologist of the West Virginia State Police Crime Lab's Serology Division

("Serology Division"), Fred Zain, testified at the petitioner's trial. In 1993, following the reversal

of defendant Glen Dale Woodall's conviction, an internal audit identified issues with some of Mr.

Zain's work in several cases. Thereafter, the West Virginia Supreme Court of Appeals ordered an

investigation into Mr. Zain and the Serology Division. Judge James O. Holliday was appointed to

supervise the investigation. After a five-month long investigation, Judge Holliday issued a report

containing the following findings:

> The acts of misconduct on the part of Zain included (1) Overstating the strength of results; (2) Overstating the frequency of genetic matches on individual pieces of evidence; (3) misreporting the frequency of genetic matches on multiple pieces of evidence; (4) reporting that multiple items had been tested, when only a single item had been tested; (5) reporting inconclusive results as conclusive; (6) repeatedly altering laboratory records; (7) grouping results to create the erroneous impression that genetic markers had been obtained from all samples tested; (8) failing to report conflicting results; (9) failing to conduct or to report conducting additional testing to resolve conflicting results; (10) implying a match with a suspect when testing supported only a match with the victim; and (11) reporting scientifically impossible or improbable results. Moreover, [investigators from the American Society of Crime Laboratory Directors/Laboratory Accreditation Board] concluded that this misconduct was "the result of systematic practice rather than an occasional inadvertent error."

*In re Investigation of the W. Va. State Police Crime Lab., Serology Div.*, 438 S.E.2d 501, 516 (W.

Va. 1993) ("*Zain I*") (Report attached as Appendix). Judge Holliday also found:

> The overwhelming evidence of a pattern and practice of misconduct by Zain completely undermines the validity and reliability of any forensic work he performed or reported during his tenure in the serology department of the state police crime laboratory. If the information which is now available concerning the pattern and practice of misconduct by Zain had been available during the

prosecution of cases in which he was involved, the evidence regarding the results of serological testing would have been deemed inadmissible.

*Id.* at 517-18. Judge Holliday recommended that

> as a matter of law, any testimonial or documentary evidence offered by Zain at any time in any criminal prosecution should be deemed invalid, unreliable, and inadmissible in determining whether to award a new trial in any subsequent habeas corpus proceeding. The only issue in any habeas corpus proceeding would be whether the evidence presented at or prior to trial or prior to the entry of a guilty plea, independent of the forensic evidence presented by Zain, would have been sufficient to support the verdict or plea.

*Id.* at 520.

The West Virginia Supreme Court of Appeals reviewed Judge Holliday's findings and recognized that "it is a violation of due process for the State to convict a defendant based on false evidence." *Zain I*, 438 S.E. 2d at 504. It also noted that "although it is a violation of due process for the State to convict a defendant based on false evidence, such conviction will not be set aside unless it is shown that the false evidence had a material effect on the jury verdict." *Id.* at 505. The court ordered that "in any habeas corpus hearing involving Zain evidence, the only issue is whether the evidence presented at trial, independent of the forensic evidence presented by Trooper Zain, would have been sufficient to support the verdict." *Id.* at 506.

## C.  The Petitioner's Post-Conviction Proceedings

The petitioner filed a pro se petition for writ of habeas corpus in the Circuit Court of Kanawha County based upon the holding in *Zain I* on December 14, 1993. At the same time, by counsel, the petitioner filed a Motion for a New Trial under Rule 33 of the West Virginia Rules of Criminal Procedure. The presiding Circuit Judge, the Honorable Paul Zakaib, consolidated the matters as Civil Action No. 93-W-47.

4

On March 21, 1994, Judge Zakaib held a hearing in the petitioner's case. The petitioner was represented by counsel, but was not himself present at the hearing. According to the petitioner, his attorney "argued for reversal of Gardner's conviction based on evidence [that] Zain had committed misconduct in Gardner's case." (Petition [Docket 2], at 6). Despite the dictates of *Zain I*, the court summarily denied relief. As noted by Judge Stanley, the order denying the petition and motion for a new trial are not part of the record currently before this court.

The petitioner states that he filed a Petition for Appeal in the West Virginia Supreme Court of Appeals, seeking reversal of the Circuit Court's final order dismissing his case. On March 1, 1995, the West Virginia Supreme Court of Appeals ordered that a writ of habeas corpus *ad subjiciendum* be issued, and that a full evidentiary hearing be conducted on April 21, 1995, before Judge Zakaib. (*See* Petition, App. A [Docket 2-2], at 1). The docket of the petitioner's state court proceedings and the petition indicate that at the April 21, 1995 hearing, the state moved for an order to retest the remaining serology evidence for comparison with the petitioner's DNA. (*See State v. Gardner*, No. 89-F-153 (Cir. Ct. Kanawha Cty, Mar. 5, 1990); Petition [Docket 2], at 7). The petitioner states that subsequently, Roche Bio Lab "returned its findings alleging that the spermatozoa found in the Galati and Ruckman cases was consistent with that of Gardner's DNA." (Petition [Docket 2], at 7). However, "[n]o further explanation was provided as to where these samples originated or as to the discrepancies in Gardner's [blood type] in light of the previous findings" that the donor of the samples had a different blood type than the petitioner. (*Id.*). It appears from the state court docket sheet that many motions have been filed regarding DNA evidence in the petitioner's state court action. It is unclear from the incomplete record before this

court why DNA evidence appears to be the only focus of this action, given the directive from the West Virginia Supreme Court of Appeals in *Zain I*.

Throughout the pendency of the state court proceeding, the petitioner has been represented by several different attorneys and submitted numerous pro se pleadings. The petitioner began filing pro se pleadings when the action was commenced in 1993. Judge Zakaib informed the petitioner in 2011 and 2012 that the court would only address motions filed by the petitioner's counsel of record. (*See* Petition, App. E [Docket 2-6]; Petition, App. F [Docket 2-7], at 1). The petitioner states that he filed these pro se petitions after "[r]ealizing that his appointed attorneys did not plan to file a petition for relief on his behalf." (Petition [Docket 2], at 7). A review of the docket sheet and the petitioner's objections indicate that the Circuit Court of Kanawha County has permitted at least six changes in the appointment of the petitioner's counsel. (*See State v. Gardner*, Case No. 93-W-47, Cir. Ct. of Kanawha Cty.).

This action is still pending in the Circuit Court of Kanawha County, nearly twenty years after it was first filed.

## II.  Standard of Review

### A.  The Magistrate Judge's Recommendations

When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews de novo those portions of the Magistrate Judge's report to which specific objections are filed.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When a party files an objection that is too general or conclusory to focus attention on any specific error supposedly committed by the Magistrate Judge, the court need not conduct a de novo review. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th

6

Cir. 1982). Moreover, when a party fails to object to a portion of the Magistrate Judge's report, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation. *See Diamond*, 416 F.3d at 315.

When a Magistrate Judge hears and rules on a non-dispositive pretrial matter in a case, a party may object to that determination within fourteen days of being served with a copy of the decision.   Fed. R. Civ. P. 72(a). The district judge in the case must consider timely objections and "may modify or set aside any portion of a magistrate judge's non-dispositive ruling 'where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.'" *Berman v. Congressional Towers Ltd. P'ship-Section I*, 325 F. Supp. 2d 590, 592 (D. Md. 2004) (quoting 28 U.S.C. § 636(b)(1)(A)); *see also* Fed. R. Civ. P. 72(a).

### B.  Federal Habeas Corpus Actions

The Anti-Terrorism and Effective Death Penalty Act of 1996 ( the "AEDPA") governs all federal habeas corpus petitions filed after April 24, 1996. *See Lindh v. Murphy*, 521 U.S. 320 (1997). The AEDPA provides as follows:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
> > (A) the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)     (i) there is an absence of available State corrective process; or
> >
> > > (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1)(A), (c).

As Judge Stanley correctly notes, the petitioner bears the burden of proving exhaustion. See *Breard v. Pruett*, 134 F.3d 615, 619 (4th Cir. 1998); *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Further, where a petitioner has failed to exhaust his state court remedies, the federal petition should be dismissed. *McDaniel v. Holland*, 631 F. Supp. 1544, 1545 (S.D. W. Va. 1986) (Haden, J.) (citing *Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973)).

There are three ways in which petitioners may exhaust their available state court remedies in West Virginia. First, petitioners may state cognizable federal constitutional claims in a direct appeal. Second, they may state such claims in a petition for a writ of habeas corpus in a state circuit court pursuant to West Virginia Code § 53-4A-1, followed by filing a petition for appeal from an adverse ruling in the Supreme Court of Appeals of West Virginia ("SCAWV"). *Moore v. Kirby*, 879 F. Supp. 592, 593 (S.D. W. Va. 1995) (Haden, J.); *McDaniel v. Holland*, 631 F. Supp. at 1545. Finally, a petitioner may also exhaust state court remedies by filing a petition for a writ of habeas corpus under the original jurisdiction of the SCAWV. However, an original jurisdiction petition that is denied without an indication that the denial is with prejudice following a determination on the merits will not exhaust the prisoner's state court remedies. *See Moore*, 879 F. Supp. at 593; *McDaniel*, 631 F. Supp. at 1546; *see also Meadows v. Legursky*, 904 F.2d 903, 908-909 (4th Cir. 1990) (abrogated on other grounds, *Trest v. Cain*, 522 U.S. 87 (1997)).

### III.   Analysis

#### A.  Exhaustion of State Remedies

The petitioner argues he should be excused from exhausting state remedies due to the inordinate delay in his state post-conviction proceedings. Under Section 2254, there is an exception to exhaustion where "circumstances exist that render such process ineffective to protect the rights

of the applicant." 28 U.S.C. § 2254(b)(1)(B)(ii). "State remedies may be rendered ineffective by inordinate delay or inaction in state proceedings." *Ward v. Freeman*, No. 94-6424, 1995 U.S. App. LEXIS 2304, at *3-4 (4th Cir. Feb. 8, 1995).

Judge Stanley noted that a review of the docket sheet in the petitioner's state collateral action showed that the petitioner "has been permitted numerous changes in court-appointed counsel, which has contributed to the extensive time period in which the petitioner's habeas petition has been pending. Such delay can be attributed as much to the petitioner and his counsel, as to the court, and is insufficient to establish a violation of the petitioner's equal protection rights." (PF&R [Docket 7], at 12). However, in his objections, the petitioner presents evidence that his attorneys requested to withdraw and did not effectively pursue his case. (*See* Objections [Docket 10], at 4-13). The petitioner also argues that the court contributed to the delay caused by the changes in counsel by not entering orders to officially appoint attorneys willing to take his case. (*See id.*). Additionally, it appears from the briefing and state court docket that the petitioner has himself vigorously pursued his claims by contacting his attorneys and the court, and attempting to file pro se motions to expedite the review process. (*See* Petition [Docket 2], at 8-9; Objections, [Docket 10], at 3-13; *State v. Gardner*, Case No. 93-W-47, Cir. Ct. of Kanawha Cty.).

"The rule excusing exhaustion in cases of inordinate delay is not limited to delays caused by judge, court officials, and prosecutors; it also has been applied to delays caused by court-appointed counsel, which may be 'attributable to the state' as long as 'the petitioner has not personally caused the delays nor condoned them." 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* 1245 § 23.4[a][ii] at n.22 (6th ed. 2011) (quoting *Harris v. Champion*, 938 F.2d 1062, 1065 (10th Cir. 1991); *see also, e.g.*, *Story v. Kindt*, 26 F.3d 402,

406 (3d Cir. 1994) (excusing exhaustion where court-appointed attorneys contributed to the eleven-year delay in deciding his state collateral proceedings because it would be "wholly untenable to penalize [the petitioner] for his attorneys' failures and the [state court's] inability to manage its own docket"). Therefore, even if the petitioner's appointed counsel contributed to the delay in the case, that would not, in itself, require the petitioner to exhaust state remedies before pursuing his habeas corpus claims in federal court.

Judge Stanley's proposed findings stated that "[a]n inordinate delay by the state in processing claims for habeas corpus relief . . . does not excuse the requirement of exhaustion; rather it shifts the burden to the state to demonstrate why exhaustion should still be required." (PF&R [Docket 7], at 9-10). For this proposition, she cites to *Lee v. Stickman*, 357 F.3d 338, 341 (3d Cir. 2004). However, the Fourth Circuit has not adopted this burden shifting requirement.

As the Fourth Circuit has noted, "the rule of exhaustion 'is not one defining power but one which relates to the appropriate exercise of power.'" *Patterson v. Leeke*, 556 F.2d 1168, 1170 (4th Cir. 1977) (quoting *Fay v. Noia*, 372 U.S. 391 (1963)). "Because the rule of exhaustion is one of comity and not of jurisdiction, it is to be applied with flexibility." *Id.* "When the state's procedural machinery is rendered ineffective . . . the federal court should not feel compelled to abstain." *Id.* (quoting *Hunt v. Warden, Maryland Penitentiary*, 335 F.2d 936, 940-41 (4th Cir. 1964)). Although the Fourth Circuit has not directly addressed the issue of an inordinate delay in state habeas proceedings, it held in an unpublished case that a district court should hear a habeas petition on its merits where the petitioner's direct appeal had been pending for fifteen years. *See Ward v. Freeman*, No. 94-6424, 1995 U.S. App. LEXIS 2304, at *5-6 (4th Cir. Feb. 8, 1995). Other courts have taken a similar approach to cases where an inordinate delay existed in state post-conviction

10

remedies. *See, e.g.*, *Turner v. Bagley*, 401 F.3d 718, 726-27 (6th Cir. 2004) (excusing exhaustion where the petitioner's state direct appeal had been pending for eleven years); *Jackson v. Duckworth*, 112 F.3d 878, 881 (7th Cir. 1997) ("Inordinate, unjustifiable delay in a state-court collateral proceeding excuses the requirement of petitioners to exhaust their state-court remedies before seeking federal habeas corpus relief."); *Story v. Kindt*, 26 F.3d 402, 405-06 (3d Cir. 1994) (excusing exhaustion where petitioner had encountered an eleven-year delay in deciding his state collateral proceedings); *Hankins v. Fulcomer*, 941 F.2d 246, 252 (3d Cir. 1991) (finding that a state court delay of eleven years in deciding motion to withdraw guilty plea rendered state procedures ineffective and excused exhaustion requirement because "further deference to the state courts would be inappropriate and would deny fundamental rights guaranteed to all defendants"); *Cody v. Henderson*, 936 F.2d 715, 718 (2d Cir. 1991) ("substantial delay in the state criminal appeal process is a sufficient ground to justify the exercise of federal habeas jurisdiction"); *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir. 1990) (finding the petitioner who "made frequent but unavailing requests to have his appeal processed . . . was not required to take further futile steps in state court in order to be heard in federal court" and excusing exhaustion where the petitioner's direct appeal had been pending for six years); 2 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure*, 1244 § 23.4[a][ii] at n.22 (6th ed. 2011) ("'Inordinate and unjustified' delay in state proceedings allows a petitioner to seek federal relief before state proceedings are completed.") (collecting cases).

The petitioner's state proceedings have been pending for nearly twenty years without decision from the state court. A twenty-year delay in deciding the petitioner's state court case is an extraordinary circumstance that warrants serious concern. Additionally, Mr. Gardner presents

compelling arguments regarding why he should not be blamed for the delay. (*See* Objections [Docket 10], at 3-13).

I therefore **FIND** that the petitioner is not required to exhaust state remedies before proceeding on a federal petition for a writ of habeas corpus.

### B.  The Petitioner's Grounds for Relief

The petitioner asserts the following grounds for relief:

> I.      GARDNER'S RIGHT TO DUE PROCESS UNDER THE 14TH AMENDMENT HAS BEEN VIOLATED IN THE COURTS OF ACCESSING THE STATE COURT REVIEW PROCESS
>
> II.     GARDNER'S RIGHT TO EQUAL PROTECTION OF LAW UNDER THE 14TH AMENDMENT HAS BEEN VIOLATED IN THE COURSE OF ACCESSING THE STATE COURT REVIEW PROCESS
>
> III.    GARDNER HAS BEEN DENIED EQUAL ACCESS TO THE STATE COURT REVIEW PROCESS AND HIS RIGHT TO BE HEARD.

(Petition [Docket 2], at iii). Each of these claims relates to the delay in the petitioner's state post-conviction proceedings, rather than the constitutionality of his state criminal conviction and sentence. As correctly noted by Judge Stanley, "[d]elay by a state court in ruling on a petition for post-conviction relief is not a ground for habeas corpus relief because there is no constitutional right to state collateral review." (PF&R [Docket 7], at 11). *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir. 1988) (finding that "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief").

The petitioner acknowledges that "most federal circuits today continue to hold that complaints filed by prisoners which take issue with their treatment by state court judge during collateral proceedings, do not state a recognized claim for federal habeas corpus[.]" (Objections

[Docket 10], at 13). However, he argues that he "presents an exception to the rule where his ineffective trial counsel and *Brady* claims which were intended to be raised in a post-conviction motion, represents the first possible chance Gardner had to raise those claims in state court, in light of the WVSC's policy to defer such claims when raised in the context of a direct appeal." (*Id.*). The petitioner relies on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012) to support this proposition. However, *Martinez* did not create a ground for relief based upon initial-review collateral proceedings. In *Martinez*, the Court discussed explicitly that it was not creating a new ground for relief. 132 S. Ct. at 1320. Rather, the holding in *Martinez* was that "[w]here . . . claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective." *Id.* It is still the law in the Fourth Circuit that delay in deciding a state habeas petition does not create grounds for relief in a federal habeas petition. *See Bryant*, 848 F.2d at 493.

I therefore **FIND** that the petitioner did not raise cognizable grounds for relief in his petition. However, a petition for writ of habeas corpus may be amended by the petitioner without triggering the rules governing successive petitions. The petitioner here has already dealt with an egregious delay in his state court habeas proceedings. Due to this most unusual delay, dismissal requiring a new action to be filed would be inequitable. Additionally, the petition references several potential grounds for relief related to the petitioner's underlying conviction that would be cognizable in federal court. "Generally, a pro se litigant's pleadings should be construed liberally to avoid inequity and the complaint should not be dismissed unless it appears beyond doubt that

13

the plaintiff can prove no set of facts that would entitle him to relief." *Sweeting v. McCabe*, 141 F. App'x 177, 178 (4th Cir. 2005) (citing *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978)). "If a pro se complaint contains a potentially cognizable claim, the plaintiff should be given an opportunity to particularize his allegations." *Id.* I therefore **GRANT** the petitioner leave to amend his petition for writ of habeas corpus to include cognizable federal constitutional claims related to his trial and conviction. The petitioner is advised that it will be difficult or impossible for him to raise claims in successive petitions if he does not raise them in his amended petition in this case, and he should include all potential grounds for relief related to his underlying conviction or else they may be considered waived. The petitioner is hereby **DIRECTED** to file an amended petition with this court within 30 days of this Order.

### IV.    Conclusion

For the reasons discussed above, the Petition for Writ of Habeas Corpus [Docket 2] is **DENIED**, and the petitioner is **DIRECTED** to file an amended petition within 30 days of this Order.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:          November 12, 2013

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

14